UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WENDY S. BENNETT,

    Plaintiff,

v.

Case No. 2:16-cv-191
HON. TIMOTHY P. GREELEY

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

# **OPINION**

Plaintiff Wendy S. Bennett brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision by the Commissioner of the Social Security Administration (Commissioner).[1] In support of her request to reverse the Commissioner's decision, Plaintiff argues that (1) the ALJ failed to properly weigh the medical opinions from two treating physicians—Dr. Raghu Rao and Dr. Charlene Sweeney; and (2) the ALJ failed to properly evaluate Plaintiff's credibility. (ECF No. 10.) Defendant has responded. (ECF No. 11.) Both parties have consented to proceed before a Magistrate Judge. (ECF No. 9.) For the reasons stated below, the Court affirms the Commissioner's decision.

On May 10, 2013, Plaintiff applied for disability insurance benefits. (PageID.212-221.) In her application, Plaintiff asserted that she was disabled due to her cervical and lumbar spine impairments, degenerative disc disease, back pain, headaches, and joint arthritis.

---

[1] Pursuant Federal Rule of Civil Procedure 25(d), the caption in this case has been updated to reflect that Nancy A. Berryhill is now the Acting Commissioner of Social Security.

(PageID.216.) The alleged onset date was July 18, 2010, and her last insured date was September 30, 2014. (PageID.213.) After Plaintiff's application was denied, she filed a written request for an administrative hearing before an Administrative Law Judge (ALJ). (PageID.122-138.)

The ALJ held an administrative hearing on June 2, 2015, in which Plaintiff was represented by Attorney Barry O'Lynnger. (PageID.66-112.) At the hearing, Plaintiff amended the alleged onset date of disability to April 27, 2012. (PageID.70.) Plaintiff and Vocational Expert William Dingess testified during the hearing. (PageID.66-112.) Plaintiff stated that she has a high school education and has previously worked as a material handler, a machine cutter, and a production assembler. (PageID.76-80.) She last worked in July 2010 as a part-time cashier at a grocery store, which she quit because of pain in her right knee. (PageID.75-76, 86.) Although Plaintiff has experienced back pain her entire life, the "real" back pain started in 2012 after she slipped while mopping her kitchen floor. (PageID.80-81.) She has had physical therapy and taken various pain medications for her back pain. (PageID.81-82.) The neurologist told her that she was not a candidate for cortisone shots because there were too many spots in her back that would need to be injected. (PageID.81-82.) Although she has neck pain, Plaintiff said her back pain is the "main issue." (PageID.82.) Plaintiff said that the crippling migraines began in 2012, shortly after her back went out. (PageID.84.) She took Imitrex in 2010, and Topamax in 2014.[2] (PageID.84, 98-99.) Her daily activities include sewing, knitting, reading, cooking simple meals, dishes, laundry, light vacuuming, and playing cards with her friends. (PageID.88.) Plaintiff said she has had to cut back on driving long distances and going out with her friends because of her pain. (PageID.88-89.) She said she could walk maybe a city block without stopping, she could only stand five or ten minutes before "completely moving," she could only sit in a chair for twenty to

---

[2] Plaintiff originally said she started Topamax in 2012, but she later stated that it may have been 2014.

twenty-five minutes on a "typical day," and she could not lift more than five to ten pounds. (PageID.94-96.) However, Plaintiff said that she could sit on her sun deck, listening to country music and knitting, for six to eight hours on a beautiful day. (PageID.90.)

On July 9, 2015, the ALJ issued a written decision denying Plaintiff's claim for DIB. (PageID.49-58). On June 20, 2016, the ALJ's decision became the agency's final decision when the Appeals Council denied Plaintiff's request for review. (PageID.30-35.)

Before addressing the ALJ's opinion and Plaintiff's arguments, the Court will summarize the relevant medical records. On December 1, 2010, Plaintiff had a two-week follow-up appointment with by Dr. Raghu Rao, in which she complained of knee pain and migraines.[3] (PageID.309-310.) Dr. Rao noted that Plaintiff's migraines were "much improved" since starting Inderal.[4] The next medical record is from an appointment with Dr. Rao that occurred on April 27, 2012. (PageID.307-308.) During this appointment, Dr. Rao examined Plaintiff following her complaints of pain in her lower back, buttocks, and right leg. Plaintiff was on crutches and rated her pain at 8/10. Dr. Rao noted sensation to light touch in the right ankle, motor deficits measured at 4/5 with flexion and hip flexion, and positive straight leg raises on the right. Dr. Rao's initial diagnosis was "[right] low back pain with Radiculopathy, possible disc herniation with motor and sensory deficit." (PageID.308.) He recommended physical therapy and prescribed Vicodin and Flexeril. An MRI later revealed "mild degenerative disc and facet joint findings with a small central disc protrusion at the L4-5 level and a small central disc protrusion at the L5-S1 level." (PageID.316.)

---

[3] Although the treatment notes from this December 1, 2010 appointment state that it was a follow-up appointment, this is the oldest medical record in this case.

[4] Plaintiff testified that she started Imitrex in 2010. Similarly, in 2014 Plaintiff told another doctor that she was previously on Imitrex. (PageID.435.) However, the medical records appear to show that Plaintiff was prescribed Inderal in 2010.

On May 11, 2012, Plaintiff reported similar symptoms to Dr. Rao during a follow-up appointment. (PageID.305-306.) Plaintiff rated the pain in her lower back at 4/10 in part because the Vicodin was effective. In addition to continuing the pain medication, Dr. Rao prescribed a Medrol Dosepak, which is a steroid to treat inflammation. Plaintiff had another follow-up appointment with Dr. Rao on July 16, 2012. (PageID.303-304.) At this appointment, Plaintiff told Dr. Rao that her symptoms had improved. She rated her pain at 5/10 in the morning and 1/10 during all other times. She complained of some numbness in her left thigh and feet but also informed Dr. Rao that she was back to normal activity and walking. Dr. Rao subsequently prescribed Neurontin to treat Plaintiff's nerve pain.

On August 9, 2012, Plaintiff complained to Dr. Rao that she was experiencing pain in her right leg. (PageID.301-302.) She rated the pain at 5/10. Dr. Rao's initial diagnosis was a possible posterior cruciate ligament tear. Dr. Rao again prescribed Plaintiff Vicodin for the pain. An MRI later revealed "small joint effusion." (PageID.313.) Plaintiff reported some improvement in her right knee pain during a follow-up appointment on September 26, 2012. (PageID.278-279.) On December 12, 2012, Plaintiff reported that the pain in her right knee and back had worsened. (PageID.276-277.) During this appointment, Plaintiff told Dr. Rao that she had been experiencing knee pain for the last three years. Dr. Rao's initial impression was knee pain, back pain, degenerative disc disease with radiculopathy, and fibromyalgia. Dr. Rao subsequently recommended that Plaintiff see an orthopedic specialist. On February 12, 2013, Plaintiff complained to Dr. Rao that she had pain in her neck and lower back, as well as numbness and weakness in her left arm and fingers. (PageID.274-273.) Dr. Rao noted that Plaintiff exhibited weakness and sensory loss in her hand. Dr. Rao again prescribed Vicodin. An MRI later revealed

"mild cervical disc degeneration with some disc annulus bulging at the C2-3, C3-4 and C4-5 levels." (PageID.311.)

On March 25, 2013, Plaintiff had a consultation with an orthopedist—Dr. Matthew Songer. (PageID.268-269.) After reviewing Plaintiff's x-rays and MRIs, Dr. Songer determined that Plaintiff had degenerative disc changes at both L4-5 and L5-S1 and a prolapsed disc centrally at L5-S1 with some relative stenosis. Dr. Songer indicated that he did not notice any severe compression or "clear evidence of radiculopathy." (PageID.269.) He recommended that Plaintiff be put on a long-term anti-inflammatory, begin a physical therapy program that focused on core-strengthening and stretching, and try to lose 60-70 pounds. On April 17, 2013, Plaintiff had another follow-up appointment with Dr. Rao. (PageID.327-328.) During this appointment, Plaintiff complained of lower back pain and left wrist pain, but she did not report any neck pain. Based on the consult with the orthopedist, Dr. Rao noted that Plaintiff was not a candidate for surgery or steroid injections. On June 19, 2013, Plaintiff met with Dr. Rao to request "disability paperwork." (PageID.418-419.) She rated her pain at an 8/10.

On August 1, 2013, Plaintiff complained to Dr. Rao that she had been suffering from a migraine for the past three days. (PageID.415-416.) To treat the migraines, Dr. Rao prescribed Inderal and Maxalt. During a follow-up appointment on October 3, 2013; Plaintiff told Dr. Rao that she had not had a migraine in the last three weeks. (PageID.408-409.) Although Dr. Rao noted that Plaintiff's chronic lower back pain was "fairly well controlled," Plaintiff again complained of pain in her hip, right buttocks, and right leg. Dr. Rao prescribed Lyrica, which is used to treat neuropathic pain. An x-ray conducted the following day found that Plaintiff's right hip was "normal." (PageID.413.) On November 13, 2013, Plaintiff again complained of migraines, lower back pain, and right leg pain. (PageID.423-424.) Dr. Rao's initial impressions

5

were chronic lower back pain with radiculopathy involving the right leg. Dr. Rao increased Plaintiff's dosage of Lyrica. Again, on January 17, 2014, Dr. Rao noted no change in Plaintiff's back pain or migraines. (PageID.432-433.) On March 24, 2014, Dr. Rao noted that Plaintiff's chronic lower back pain was fairly well controlled, but the migraines were not controlled. (PageID.428-429.) Because Plaintiff was still experiencing migraines, Dr. Rao referred Plaintiff to a neurologist.

On April 16, 2014, Plaintiff met with a neurologist—Dr. Charlene Sweeney. (PageID.435-437.) Plaintiff told Dr. Sweeney that she has a history of headaches dating back to childhood and currently has 2-3 migraines per week. The headaches make Plaintiff nauseous and sensitive to light. During this appointment, Plaintiff did not mention any issues with her back and told Dr. Sweeney that she walked for exercise. Dr. Sweeney noted that Plaintiff had normal sensation to all modalities, exhibited full strength, a negative Romberg test, and her gait was stable. Dr. Sweeney diagnosed Plaintiff with "migraine without aura with intractable migraine without STA." (PageID.437.) Dr. Sweeney prescribed Topamax to treat the migraines. On May 29, 2014, Plaintiff told Dr. Rao that the Topamax had led to a 50% improvement in her migraines. (PageID.426-427.) On July 31, 2014, Plaintiff had a follow-up appointment with Dr. Sweeney. (PageID.438-439.) Plaintiff told Dr. Sweeney that the Topamax was helping but that she still suffered two to three disabling headaches per week. Dr. Sweeney subsequently increased the Topamax dosage. On August 14, 2014, Plaintiff reported that her back pain was between 6/10 at the minimum and 8/10 at the maximum. (PageID.454-455). Dr. Rao noted that Plaintiff's migraines were "controlled" and her chronic lower back pain was "fairly well controlled." (PageID.455.)

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Mullen*, 800 F.2d at 545.

The ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520(a-f),

416.920(a-f); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, after considering the claimant's residual functional capacity, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines Plaintiff is not disabled under any step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R § 404.1520(a). If the ALJ can make a dispositive finding at any point in the review, no further finding is required. 20 C.F.R. §§ 404.1520(a).

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date—April 27, 2012—to the date she was last insured—September 30, 2014. (PageID.51.) At step two, the ALJ found that Plaintiff suffered from the

severe impairments of "disorders of the back and migraine headaches."[5] (PageID.51-52.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.52.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) except that she is further limited to work involving frequent climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, frequent balancing and kneeling, occasional stooping, crouching and crawling, and frequent overhead reaching with both upper extremities. The claimant is limited to frequent (not constant) handling and fingering with the left upper extremity, and she must avoid more than moderate exposure to excessive noise and all exposure to unprotected heights, hazards and the use of moving machinery.

(PageID.52-53.) The ALJ also found that Plaintiff was unable to perform any of her past relevant work of as a material handler, a machine cutter, or a production assembler. (PageID.56.) At step five, the ALJ determined that Plaintiff could perform jobs that existed in significant numbers in the national economy. (PageID.57.) In making this determination, the ALJ relied on the vocational expert's testimony that Plaintiff could perform the following jobs: office helper (522,000 national positions); bench assembler (120,000 national positions); housekeeping/cleaner (860,000 national positions); and cashier (2,100,000 national positions). (PageID.57.) Accordingly, the ALJ concluded that Plaintiff was not disabled during the time period from her alleged onset date through the date she was last insured. (PageID.63.)

---

[5] The ALJ also found that Plaintiff suffered from several non-severe impairments including anemia, obesity, and a neck disorder. (PageID.51.) Moreover, the ALJ determined that Plaintiff's medical records did not establish that Plaintiff suffered from a mental impairment or that Plaintiff was properly diagnosed with fibromyalgia. (PageID.52.) Plaintiff does not appeal these rulings.

Plaintiff first contends that the ALJ erred when he afforded "little weight" to the medical opinions of Plaintiff's treating physicians—Dr. Raghu Rao and Dr. Charlene Sweeney.

Dr. Rao wrote a disability narrative report letter and completed a multiple impairment questionnaire.[6] (PageID.385, 392-399.) In the letter, Dr. Rao opined that Plaintiff should be granted disability because "she is unable to perform full time duties that includes 8 hours per day, 5 days per week, in a normal competitive work setting." (PageID.385.) Although Plaintiff initially complained of pain in her right lower extremity and back in 2010, Dr. Rao stated that the pain has since increased. Dr. Rao continued to state that Plaintiff has difficulty walking and is not a candidate for surgery or steroid injections. In the multiple impairment questionnaire, Dr. Rao identified Plaintiff's diagnoses as: (1) chronic low back pain–degenerative disc disease and disc protrusion at L4-L5, L5-S1; (2) right leg pain; (3) neck pain; (4) H. pylori and gastritis; and (5) fibromyalgia. (PageID.392). To support these diagnoses, Dr. Rao cited the MRI and the exam showing sensory loss and motor weakness in Plaintiff's right leg. Dr. Rao stated that Plaintiff's primary symptoms included (1) moderate chronic back pain and (2) right leg weakness, numbness, loss of sensation, and poor mobility. Dr. Rao rated Plaintiff's level of pain as 7 or 8 out of 10. Dr. Rao stated that Plaintiff could sit for less than an hour in an eight hour work day; stand/walk for less than an hour in an eight hour work day; could not sit continuously for more than twenty minutes; and could not lift or carry anything over ten pounds. Dr. Rao further stated that Plaintiff could not do a full-time competitive job that required activity on a sustained basis and that she would likely be absent from work two to three times per month.

On July 31, 2014, Dr. Sweeney also filled out a headaches impairment questionnaire. (PageID.440-445.) Dr. Sweeney opined that Plaintiff suffers from intractable

---

[6] Dr. Rao wrote these documents in June 2013, but did not sign the documents until June 2014. (PageID.529.)

10

migraines that cause "global throbbing with nausea, vomiting." (PageID.440.) Dr. Sweeney characterized the headaches as severely intense and estimated that Plaintiff would miss more than three days of work per month. Dr. Sweeney further stated that the severe headaches likely began in 2010.

A treating physician's medical opinion is generally entitled to great weight when evaluating a patient's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The ALJ must give controlling weight to a treating physician's medical opinion when (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

If an ALJ affords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for discounting the opinion. *Id.* at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* Moreover, this requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "'are not well-supported by any objective findings' and are 'inconsistent with other credible evidence'" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77. Similarly, if the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the proper weight. *Id.* at 376. In making this determination, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination; (2) nature and extent of the treatment relationship;

(3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is required to consider these factors, "an exhaustive factor-by-factor analysis" is not required. *See Francis v. Comm'r of Soc. Sec.,* 414 Fed. App'x 802, 804 (6th Cir. 2011).

Here, the ALJ afforded only "little weight" to the medical opinions of Dr. Rao and Dr. Sweeney. As to Dr. Rao's opinion, the ALJ stated:

> The undersigned gives little weight to Dr. Rao's opinions because they appear to significantly exaggerate the claimant's limitations in comparison with the medical evidence of record. The MRI scan of the claimant's lumbar spine revealed <u>only mild findings</u>, the claimant has received only minimal, conservative treatment for her back condition (Exhibits 1F, 2F-47). The MRI of the claimant's cervical spine also revealed mild findings and the MRI of the claimant's right knee was essentially negative (Exhibit 2F-42, 44). Dr. Rao indicated that the claimant suffered from weakness in the right leg as well as sensory and motor loss (Exhibit 13F-1). However, the neurological examination of the claimant in April 2014 revealed full strength and normal sensation in the lower and upper extremities (Exhibit 9F-3). Dr. Rao's opinions are highly inconsistent with the objective medical findings and the claimant's history of minimal and conservative treatment. They are also undercut by the claimant's relatively full range of daily activities as stated in her activities of daily living report as noted above and at Exhibit 4E. Because of the inconsistencies, significant weight cannot be given to Dr. Rao's opinions.

(PageID.55-56) (emphasis in original).

The Court finds that the ALJ did not err by affording "little weight" to Dr. Rao's medical opinion. In the multiple impairment questionnaire, Dr. Rao stated that his opinion was based on MRIs and an exam that showed sensory loss and motor weakness in Plaintiff's right leg. However, as noted by the ALJ, Dr. Rao's medical opinions were inconsistent with the medical records—including the results of several MRIs and x-rays—and Plaintiff's daily activities report.

First, the MRIs of Plaintiff's neck and back revealed only "mild" findings—"mild degenerative disc and facet joint findings with a small central disc protrusion at the L4-5 level and a small central disc protrusion at the L5-S1 level" (PageID.316); and "mild cervical disc degeneration with some disc annulus bulging at the C2-3, C3-4 and C4-5 levels" (PageID.311). Although Dr. Rao initially suspected radiculopathy, there was no evidence of radiculopathy on any of Plaintiff's MRIs. This finding was confirmed after Dr. Rao referred Plaintiff to an orthopedist who reviewed the MRIs. The orthopedist noted that there was no severe compression. Similarly, the MRI of Plaintiff's right knee showed only "small joint effusion" (PageID.313) and an x-ray of Plaintiff's right hip determined that it was "normal" (PageID.413). Despite Plaintiff's claims that the ALJ substituted his interpretation of the MRIs for Dr. Rao's medical opinion, the Court finds that the ALJ was not interpreting the MRIs or x-rays. Instead, the ALJ was relying on the findings that were explicitly stated in the results of the MRI. Furthermore, Plaintiff's more recent medical records did not note any sensory loss or motor weakness. (PageID.426-433.) Significantly, when Plaintiff was examined by Dr. Sweeney on April 16, 2014, Plaintiff had normal sensation to all modalities, exhibited full strength; had a negative Romberg test, and her gait was stable. (PageID.436.)

In addition, Dr. Rao's opinion of the pain that Plaintiff is suffering is inconsistent with Plaintiff's medical records. In the multiple impairment questionnaire, Dr. Rao rated Plaintiff's level of pain as 7 or 8 out of 10, but the majority of medical records establish that Plaintiff reported pain at much lower levels. For example, Plaintiff rated her pain as 4/10 on May 11, 2012 (PageID.305); 5/10 in the morning and 1/10 generally on July 16, 2012 (PageID.303); 5/10 on August 9, 2012 (PageID.301); 5/10 on December 12, 2012 (PageID.276); 6/10 on February 12, 2013 (PageID.274); and 4/10 on April 17, 2013 (PageID.272).

Dr. Rao's opinions are also inconsistent with Plaintiff's daily activities. Dr. Rao opined that Plaintiff could sit for less than an hour in an eight hour work day; stand/walk for less than an hour in an eight hour work day; could not sit continuously for more than twenty minutes; and could not lift or carry anything over ten pounds. In her function report dated June 29, 2013, Plaintiff reported that her daily activities include preparing small meals, vacuuming, cleaning dishes, and folding laundry. (PageID.223-230.) She also reported that she goes grocery shopping and enjoys playing cards with her friends one to two days a week. Plaintiff stated that she could lift between fifteen and twenty pounds.[7] Although Plaintiff also reported that she kept her activities limited to twenty minutes because she needed to rest her back, Plaintiff testified that she could sit on her sun deck, listening to country music and knitting, for six to eight hours on a nice day. Plaintiff also testified that her back pain and migraines have only caused her to cutback on driving for longer durations and attending social gatherings. At the April 17, 2013 appointment with Dr. Sweeney, Plaintiff said that she walks for exercise. Thus, Plaintiff's daily activities directly contradict Dr. Rao's recommended limitations.

Finally, Plaintiff contends that the ALJ should have considered several other factors when determining the proper weight to afford Dr. Rao's medical opinion, such as Dr. Rao was Plaintiff's primary physician and Dr. Rao's treatment focused on Plaintiff's spine and back. The medical records establish that Dr. Rao has a close relationship with Plaintiff as she became Plaintiff's primary physician in 2010. (PageID.362-363.) However, the Sixth Circuit has stated that an exhaustive factor-by-factor analysis is not required. *See Francis v. Comm'r of Soc. Sec.,* 414 Fed. App'x 802, 804 (6th Cir. 2011). Because of the inconsistences with Dr. Rao's opinion

---

[7] During the hearing, Plaintiff testified that she could not lift anything over ten pounds.

and Plaintiff's medical records and MRIs, as well as Plaintiff's daily activities, the Court cannot conclude that the ALJ erred when he afforded "little weight" to Dr. Rao's medical opinion.

Next, as to Dr. Sweeney's opinion, the ALJ stated:

> The undersigned gives little weight to Dr. Sweeney's opined limitations. Dr. Sweeney had only met with the claimant twice before completing the assessment form, suggesting that she had not established a significant treatment relationship with the claimant. The claimant met with Dr. Sweeney only on a routine basis and there is no evidence of any emergency treatment for this condition. The recent MRI of the claimant's brain does not suggest a debilitation impairment (Exhibit 14F-15). Furthermore, Dr. Sweeney has not recommended any more aggressive treatments for the condition. The claimant has a long history of migraine headaches, treated mostly by over-the-counter medicine and now improved with Topamax (Exhibit 14F-10). While the evidence suggests that they cause some limitations, the evidence does not provide strong support for Dr. Sweeney's opinions.

(PageID.56.)

Similar to the ALJ's treatment of Dr. Rao's medical opinion, the Court also finds that the ALJ did not err when he afforded little weight to Dr. Sweeney's medical opinion. Although Plaintiff complains that the ALJ relied on a brain MRI from 2015 to support the fact that Plaintiff does not suffer a disabling impairment, the ALJ also provided several other reasons to support his determination. First, Dr. Sweeney gave her opinion after seeing Plaintiff for only the second time on July 31, 2014. Thus, as the ALJ noted, there was not a significant treatment relationship between Plaintiff and Dr. Sweeney at the time of the opinion. Second, the medical records establish that Plaintiff's headaches improved after Dr. Sweeney gave her medical opinion when Plaintiff increased her on Topamax dosage—on August 14, 2014, Plaintiff reported a 90% improvement and Dr. Rao noted that Plaintiff's migraines were controlled.[8] Third, Dr. Sweeney's

---

[8] It should be noted that Plaintiff again reported an increase in migraines in April 2015, after her last insured date of September 30, 2014.

15

opinion that the severe headaches began in 2010 is inconsistent with Plaintiff's testimony that she has had headaches her entire life but the severe headaches began in 2012. Therefore, the Court concludes that the ALJ did not err when he afforded little weight to Dr. Sweeney's medical opinion.

Plaintiff also argues that the ALJ violated SSR 96-8p because he "failed to cite to any specific medical evidence, nor did he rely on any persuasive non-medical facts that supports the physical RFC findings for [Plaintiff]." (PageID.571.) However, contrary to Plaintiff's assertion, the ALJ provided several reasons to support his RFC finding:

> While she clearly suffers from the severe impairments noted above, her allegations of debilitating symptoms and limitations are not credible. The claimant has complained of debilitating back pain and neck pain but the imaging studies revealed only mild findings (Exhibit 2F-42, 47). The imaging studies do not provide support for the claimant's complaints of radiculopathy and imaging studies of the claimant's knee were unremarkable (Exhibit 2F-44). The claimant has received only conservative treatment for her back pain, consisting of pain medication, anti-inflammatories and physical therapy (Exhibit IF, 2F-I0, 5F-2). She has neither sought nor received any treatment for her neck and testified that her neck pain is "tolerable" (hearing testimony). At an April 2014 appointment with her neurologist, the claimant denied any musculoskeletal complaints and a physical examination revealed a normal gait, as well as normal strength, reflexes and sensation in the extremities (Exhibit 9F-l). The claimant reported that she was able to prepare meals, and perform light household chores on a daily basis (Exhibit 4E-3). She also reported that she enjoyed crafts, sewing, knitting and playing cards (Exhibit 4E-5). These activities, considered in combination with the imaging studies, physical examinations and the history of conservative treatment strongly suggested that the claimant has maintained the ability to perform light work. Because pain is highly subjective, the undersigned gave all reasonable deference to the claimant's complaints of back pain, neck pain and numbness in the upper extremities. To further accommodate the claimant's subjective knee complaints and because of her headaches, she is found unable to climb ladders, ropes or scaffolds. She is limited to frequent balancing and kneeling, and occasional stooping, crouching and crawling because of her back pain, and frequent (not constant) overhead reaching with both upper

> extremities. The claimant is limited to frequent (not constant) handling and fingering with the left upper extremity.
>
> . . .
>
> Although the claimant has complained of frequent headaches, she has not been prescribed medication to treat break-through headaches, suggesting that the severity of the pain is not as debilitating as alleged. The claimant has also maintained the ability to drive a car, perform household chores, read for pleasure, and engage in social activities and craft activities such as knitting and sewing. Given the chronic nature of the claimant's migraine headaches, she should avoid work environments with more than a moderate exposure to excessive noise. She should also avoid ropes, ladders and scaffolds, and all exposure to unprotected heights, hazards and the use of moving machinery.

(PageID.54-55.)

Based on these reasons, the Court concludes that the ALJ did not err when affording "little weight" to the medical opinions of Dr. Rao and Dr. Sweeney.

Plaintiff next contends that the ALJ erred when he determined that Plaintiff's subjective complaints of the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Plaintiff argues that the ALJ's credibility determination violated SSR 96-7p and 20 C.F.R. § 404.1529(c)(2) because it was solely based on his lay interpretation of objective medical evidence. Plaintiff also argues that the ALJ improperly relied on the fact that Plaintiff previously worked with headaches because the migraines did not begin until 2012.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 Fed. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.) Nevertheless, the ALJ's assessment of a claimant's credibility "must be reasonable and

supported by substantial evidence in the record." *Rogers*, 486 F.3d at 249. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.

The Sixth Circuit applies a two-part test when evaluating a claimant's subjective complaints. First, the ALJ must determine whether "there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Rogers*, 486 F.3d at 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). Second, "if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* (citing 20 C.F.R. § 416.929(a)). In making this determination, the ALJ should also consider the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, the claimant received to relieve the pain; (6) measures used by the claimant to relieve symptoms; and (7) other factors concerning your functional limitations. *Id.*; *see also* SSR 96-7p.[9]

The Court finds that the ALJ did not err when assessing Plaintiff's credibility. Although the ALJ noted the mild findings in the MRIs and x-rays, the ALJ did not rely solely on objective medical evidence in assessing Plaintiff's credibility. Instead, in making his credibility determination, the ALJ also expressly relied on Plaintiff's daily activities (as detailed above); the type, dosage, and effectiveness of medication to alleviate the symptoms—including Vicodin, Topamax, anti-inflammatory medication, and other over the counter pain medications; and treatment other than medication—relatively conservative treatment such as physical therapy.

---

[9] SSR 96-7p was rescinded on March 16, 2016, but was binding at the time of the ALJ's decision.

Finally, the Court also finds that the ALJ did not improperly rely on the fact that Plaintiff previously worked with headaches. The medical records, medical opinions, and Plaintiff's testimony are highly inconsistent. Plaintiff testified that she has had headaches her entire life. She also testified that the crippling migraines began when she slipped and hurt her back in 2012. The medical records establish that Plaintiff reported having headaches to Dr. Rao in 2010. However, the medical records show that Plaintiff did not seek medical attention for her headaches again until August 2013. Dr. Rao issued his medical impairment questionnaire in 2012, but he did not list migraines as one of the five different diagnosis he included to support finding Plaintiff disabled. Plaintiff was not diagnosed with migraines until April 2014, when she was evaluated by Dr. Sweeney. However, in her headache questionnaire, Dr. Sweeney stated that the migraines likely began in 2010. Based on these conflicting facts, it is unclear when the migraines started and how disabling they are. Thus, the Court finds that the ALJ could reasonably conclude that the migraines have not changed significantly over the years.

In sum, this Court finds that there is substantial evidence to support the Commissioner's decision that Plaintiff was not disabled between April 27, 2012, and September 30, 2014, as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

Dated: August 22, 2017

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE